T.C. Memo. 1999-228


UNITED STATES TAX COURT


HART FOUNDATION, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23093-96X.          Filed July 12, 1999.


William J. Tully (an officer), for petitioner.

Kirk M. Paxson, for respondent.


MEMORANDUM OPINION


LARO, Judge:  Petitioner petitioned the Court to declare whether petitioner qualifies for exempt status under section 501(c)(3).  See sec. 7428.  The parties dispute whether petitioner meets the operational test of section 1.501(c)(3)-1, Income Tax Regs.  We hold it does not.  Unless otherwise stated, section references are to the applicable versions of the Internal

Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

### Background

We decide this case on the basis of the entire administrative record, see Rule 217(b)(1), which is incorporated herein by this reference. Petitioner's mailing address was in Ontario, California, when its petition was filed.

William J. Tully is a promoter of tax-exempt entities, and he was retained by Bruce R. Hart to form a tax-exempt foundation under the control of the Hart family. Mr. Tully formed a corporation named "Hart Foundation" (petitioner herein). Petitioner's officers are Mr. Tully (vice president), Mr. Hart (president), Dixie Hart (secretary), and Elva Mae Hart (treasurer). Petitioner's officers also serve as its directors.

Mr. Tully filed articles of incorporation for petitioner with the Nevada secretary of state, and he prepared bylaws for petitioner. The articles state that petitioner's primary purpose is "TO PROVIDE FINANCIAL ASSISTANCE FOR THE NEEDY." The bylaws state that petitioner's primary purpose is that set forth in the articles. The bylaws further state that "Nothing herein contained shall be construed to prevent any Director from receiving compensation for services to the Corporation rendered in a capacity other than Director."

On May 24, 1993, petitioner filed with the Commissioner a Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code (application), in which it sought recognition as a tax-exempt entity. The application reported that petitioner's activities were: (1) Supplying money, goods, or services to the poor, (2) services for the aged, and (3) aid to the handicapped. The information that petitioner provided to the Commissioner on and with the application was vague as to the specifics of these activities. The application indicated that petitioner had not currently begun any activity, except for organizational activities. As to sources of financial support, the application stated:

> At the present time this organization does not have any procedure for the generation of income other than * * *
>
>     *    *    *    *    *    *    *
>
> (a) Direct donations from the general public at large,
>
> (b) Larger sums from various fund raising activities,
>
> (c) A possible "Thrift Store" type of operation, and
>
> (d) Donations of property (both personal and real) which can be turned into cash, and
>
> (e) Various others as may be recommended and implemented by the organization.

On July 9, 1993, the Commissioner mailed petitioner a letter seeking clarification of the information that it had provided him

on and with the application. The letter specified the information that the Commissioner needed to rule on petitioner's request for exempt status and listed the name and phone number of a person at the Internal Revenue Service to contact with any questions.

On September 13, 1993, the Commissioner received a response to his letter. The response, which was written by Mr. Tully, gave vague answers to the questions set forth in the Commissioner's letter and did not explain in detail petitioner's proposed activities or operation.

On January 20, 1994, the Commissioner mailed petitioner another letter seeking specificity as to petitioner's organization, activities, and operation. The letter asked for specific information that the Commissioner needed to rule on petitioner's request for exemption and listed the name and phone number of the person at the Internal Revenue Service to contact with any questions.

On March 14, 1994, Mr. Tully, on behalf of petitioner, responded to the Commissioner's letter of January 20, 1994. This response was no more informative than the prior response as to the specifics of petitioner's organization, activities, or operation. Approximately 2 months later, Mr. Hart, in his capacity as petitioner's president, also responded to the Commissioner's letter of January 20, 1994. The Commissioner had

requested Mr. Hart respond in his capacity as president. Mr. Hart's response was no more informative than Mr. Tully's response of March 14, 1994.

On August 2, 1994, the Commissioner mailed petitioner another letter seeking specificity as to petitioner's organization, activities, and operation. The letter explained that the Commissioner needed specific information before he could rule that petitioner was exempt from taxation under section 501(c)(3). The letter, citing and quoting Rev. Proc. 90-27, sec. 5.02, 1990-1 C.B. 514, 515, stated that

> "Exempt status will be recognized in advance of operations if proposed operations can be described in sufficient detail to permit a conclusion that the organization will clearly meet the particular requirements of the section under which exemption is claimed. A mere restatement of purposes or a statement that proposed activities will be in furtherance of such purposes will not satisfy this requirement. The organization must fully describe the activities in which it expects to engage, including the standards, criteria, procedures or other means adopted or planned for carrying out the activities, the anticipated sources of receipts, and the nature of contemplated expenditures. Where the organization cannot demonstrate to the satisfaction of the Service that its proposed activities will be exempt, a record of actual operations may be required before a ruling or determination letter will be issued. * * *" [Emphasis added in the letter.]

The letter asked for specific information that the Commissioner needed to rule on petitioner's request for exemption and listed the name and phone number of the person at the Internal Revenue Service to contact with any questions.

On October 6, 1994, petitioner responded to the Commissioner's letter of August 2, 1994. This response was no more informative than the prior responses as to the specifics of petitioner's organization, activities, or operation. The latest response repeated many of the statements set forth on the prior response.

On December 13, 1994, the Commissioner issued to petitioner a 30-day letter reflecting the Commissioner's determination that petitioner did not qualify under section 501(c)(3) because it failed the operational test of section 1.501(c)(3)-1(c), Income Tax Regs. On February 2, 1995, petitioner notified the Commissioner that it was appealing that determination, and approximately 6 months after that, Mr. Tully met with one of the Commissioner's Appeals officers to discuss petitioner's case. On or about August 10, 1995, petitioner filed with the Commissioner a second Form 1023. Petitioner's second Form 1023 stated that

> the primary purpose of the foundation, as stated in its oroginal [sic] application for exemption, * * * [was] amended to read as follows:
>
> "The primary purpose of the foundation will be to raise funds for financially strap families living within the immediate area of the foundation's base of operation with all funds being administered by other IRS approved 501(c)(3) charitable organizations such as the Salvation Army, United Way and the Catholic Church".
>
> * * * the foundation will limit its currect [sic] fund raising activities to raising funds directly from its

officers, directors and their immediate familites
[sic], friends and business associates.

The second Form 1023 did not list specifics as to petitioner's operations, including the manner in which petitioner would effect its primary purpose.  The second Form 1023 did not address any safeguards against private inurement.

On April 9, 1996, the Commissioner mailed a letter to petitioner explaining that it had not yet described its operations in sufficient detail.  The letter set forth four items of information that the Commissioner lacked as to petitioner including a definition of the term "financially strap" as set forth in the second Form 1023.

By way of an undated letter, Mr. Tully responded to the Commissioner's letter of April 9, 1996.  The response was generally vague as to the information sought.  As to the definition of the term "financially strap", the letter stated:

> This organization defines the term "financially strap" as a temporary condition wherein the person, or family, under consideration is without "immediate funds in sufficient amount to provide the very necessities of life for the present day, or week, at most".

> It is not to bail out any person or family from their current financial psoition [sic].  Rather, it is a temporary means of relief that is intended to assist that person or family in their immediate need of foods and or lodging for at least a day or two, perhaps a week at the most until they can get on relief or find other assistance, if that be the case.

It is to make sure that the person or persons in question do not have to go hungry over night or not have a safe place to stay.

Included in this immediate need might be considered a doctor appointment for life threatening situations.

On July 24, 1996, the Commissioner issued to petitioner a final adverse determination letter. The letter stated:

Our adverse determination was made for the following reason(s):

You did not meet the operational test under section 1.501(c)(3)-1 of the Income Tax Regulations. In order to qualify under Code section 501(c)(3), an organization must be both organized and operated exclusively for one or more purposes specified in that section. You did not describe your proposed activities in sufficient detail as required by section 1.501(c)(3)-1 of the Regulations.

### Discussion

We must decide whether petitioner qualifies for exempt status under section 501(c)(3). We have recently decided the same issue adversely to five other entities also formed and represented by Mr. Tully, in cases with administrative records virtually identical to the administrative record at hand. See Resource Management Found. v. Commissioner, T.C. Memo. 1999-224; Share Network Found. v. Commissioner, T.C. Memo. 1999-216; Tamaki Found. v. Commissioner, T.C. Memo. 1999-166; Tate Family Found. v. Commissioner, T.C. Memo. 1999-165; Larry D. Bowen Family Found. v. Commissioner, T.C. Memo. 1999-149. In each of those

cases, we held that the administrative record upon which the case was to be decided did not contain enough evidence to support a finding that the taxpayer met the operational test of section 1.501(c)(3)-1(c), Income Tax Regs. We also noted that each of the taxpayers had failed to prosecute its case properly, including the fact that none of the taxpayers had filed a brief, as ordered by the Court and required by Rule 151, or had explained its failure to do so.

We apply the reasoning of those cases and hold that petitioner fails to qualify for exempt status under section 501(c)(3). Accordingly,

Decision will be entered

for respondent.